In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00164-CV
______________________________


IN THE INTEREST OF
ARNESHIA NACOLE GOODEN, A CHILD


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 95S0424-005


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Eric Alexander has appealed from a judgment rendered July 23, 2003. He is not indigent and
is thus responsible for paying or making adequate arrangements to pay the clerk's fees for preparing
the record. See Tex. R. App. P. 37.3(b). On December 11, we contacted Alexander by letter,
pointing out that he had not made any effort to obtain a record and warning him that the record was
over forty-five days overdue. We then gave him notice and opportunity to cure the defect, and
warned him that, if we did not receive an adequate response from him by DecemberÂ 22, 2003, his
appeal would be subject to dismissal pursuant to Tex. R. App. P. 42.3(b), (c). As of this date,
Alexander has not contacted this Court.
Â Â Â Â Â Â Â Â Â Â Â Â We dismiss the appeal.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â January 12, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â January 13, 2004




ppeals are presently pending before this Court. Davis raises identical issues and
makes identical arguments in all three of the appeals. (3) This appeal concerns Davis' conviction for
aggravated assault with a deadly weapon. Davis argues that he received ineffective assistance of
counsel and that his sentences constitute grossly disproportionate punishment in violation of the
Eighth Amendment.

II. Ineffective Assistance of Counsel

 Davis claims, in his first point of error, that he received ineffective assistance of counsel. 
The standard of testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668 (1984). To prevail on this claim, an appellant must prove by a
preponderance of the evidence (1) that his or her counsel's representation fell below an objective
standard of reasonableness and (2) that the deficient performance prejudiced the defense. Id. at 689;
Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To meet this burden, the appellant
must prove that the attorney's representation fell below the standard of prevailing professional norms
and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial
would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this
standard, a claimant must prove that counsel's representation so undermined the proper functioning
of the adversarial process that the trial cannot be relied on as having produced a just result. 
Strickland, 466 U.S. at 686. 

 Davis complains that counsel was ineffective by failing to adequately inform Davis that the
State's recommendations would not be binding on Judge Khoury and that Judge Khoury has a
reputation for not following the State's recommendations. In addition, Davis claims trial counsel was
ineffective for not inquiring into the actual numerical split of the jurors who believed Davis was not
guilty. 

 A. Proceedings in Judge Khoury's Court 

 Davis claims he would not have pled guilty if he had "been properly informed that Judge
Khoury does not take plea agreements and that he has a history of not following the
recommendations of the District Attorney's Office." The record demonstrates that Davis had been
informed that Judge Khoury does not accept negotiated plea agreements and that his plea would be
an open plea before the court. Before leaving Judge Brabham's court, Judge Brabham admonished
Davis as follows: 

 [Judge Brabham]: And, Mr. Davis, you understand those are just
recommendations before the 124th District Court?


 [Davis]: Uh-huh.


 [Judge Brabham]: You need to answer out loud.


 [Davis]: Yes, sir.


 [Judge Brabham]: I mean, there's no plea agreements or plea bargains in the
124th District Court. I just want to be sure you understand.


 [Davis]: Yes, I understand.


In addition, the proceedings in the 124th Judicial District Court make it abundantly clear Davis was
informed there was no plea agreement. Judge Khoury engaged Davis and the attorneys in the
following colloquy:

 [Judge Khoury]: . . . . Now, in any of these cases, is there any type of a plea
bargain agreement?


 [State]: No, your Honor.


 [Defense Counsel]: No, your Honor.


 [Judge Khoury]: In any of these cases, is there any type of agreement or
understanding by and between counsel for the State, counsel for the accused and the
accused himself that in any way can be considered as a plea bargain agreement?


 [State]: No, your Honor.


 [Defense Counsel]: No, your Honor.


 [Judge Khoury]: Are these all open pleas of guilty to this Court?


 [State]: They are, your Honor.


 [Defense Counsel]: That's correct, your Honor.


 [Judge Khoury]: Now, what that means, Mr. Davis, is this: The lawyers will
make recommendations to me on what they think I should do. I'll listen to them, I'll
listen to them equally. But you need to be aware of the fact that I don't always follow
lawyers' recommendations. I sometimes do, I sometimes don't. And because there
is no plea bargain in any of these cases, should I choose not to follow their
recommendations, you don't get to withdraw your guilty pleas; do you understand
that?


 [Davis]: Yes, sir.


 [Judge Khoury]: Understanding there is no plea bargain agreement in any of
these three cases, do you wish to continue with your guilty plea or not?


 [Davis]: Yes.


 [Judge Khoury]: Your guilty pleas.


 [Davis]: Yes, sir.


As demonstrated by the above quotations, Davis was well informed that the recommendations would
not be binding on Judge Khoury. Further, the record is silent concerning whether Judge Khoury has
a reputation for not following the State's recommendations. The ineffectiveness of counsel is a
matter that must be firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness. Smith v. State, 51 S.W.3d 806, 813 (Tex. App.--Texarkana 2001, no pet.). 
 B. Numerical Split of Jury

 Davis also argues his trial counsel was ineffective for failing to inquire into the actual
numerical split of the jurors who believed Davis was not guilty. Judge Brabham informed Davis and
trial counsel the note indicated that the jury was deadlocked and of the exact numerical split of the
jurors' votes. Judge Brabham merely withheld whether more jurors believed Davis was not guilty. 
Davis has failed to present this Court with any authority that the trial court was required to show
counsel the actual note or to inform him of the number of jurors voting to acquit. When, as in this
case, a trial court inadvertently learns of the numerical split in a deadlocked jury, we are not
convinced the court is required to inform a defendant or the State of the numerical breakdown of jury
deliberations. See Ex parte Prewitt, No. 04-95-00737-CR, 1996 Tex. App. LEXIS 780, at *6 (Tex.
App.--San Antonio Feb. 28, 1996, pet. ref'd) (not designated for publication). Davis has not shown
that his trial counsel was ineffective for not asking the trial court to reconsider its decision not to
reveal the votes of the jurors. 

 We note the record is silent concerning counsel's motivations. Our review of counsel's
representation is highly deferential, and we indulge a strong presumption that counsel's conduct falls
within a wide range of reasonable representation. Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at
712. That another attorney, including appellant's counsel on appeal, might have pursued a different
course of action does not necessarily indicate ineffective assistance. Harner v. State, 997 S.W.2d
695, 704 (Tex. App.--Texarkana 1999, no pet.). We will not conclude the challenged conduct
constitutes deficient performance unless the conduct was so outrageous that no competent attorney
would have engaged in it. Garcia v. State, 57 S.W.3d 436, 441 (Tex Crim. App. 2001); see
Thompson v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). We are unable to conclude no
competent attorney would have permitted his client to enter an open plea before Judge Khoury. 
Davis' first point of error is overruled.

III. Disproportionate Sentence 

 Davis filed a motion for new trial alleging that his sentence was disproportionate to the
offense. This Court has held that a motion for new trial is an appropriate way to preserve this issue. 
Mullins v. State, 208 S.W.3d 469 (Tex. App.--Texarkana 2006, no pet.); Delacruz v. State, 167
S.W.3d 904 (Tex. App.--Texarkana 2005, no pet.). Davis contends the sentence imposed by the
trial court was disproportionate to the offense, citing Solem v. Helm, 463 U.S. 277 (1983). Texas
courts have traditionally held that, as long as the punishment assessed is within the range prescribed
by the Legislature in a valid statute, the punishment is not excessive, cruel, or unusual. See, e.g.,
Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973). Here, Davis' sentences fall within
the applicable ranges of punishment. 

 That does not end the inquiry. A prohibition against grossly disproportionate punishment
survives under the Eighth Amendment to the United States Constitution apart from any consideration
of whether the punishment assessed is within the range established by the Legislature. U.S. Const.
amend. VIII; see Solem, 463 U.S. at 290; Harmelin v. Michigan, 501 U.S. 957 (1991) (Scalia, J.,
plurality op.); Jackson v. State, 989 S.W.2d 842, 846 (Tex. App.--Texarkana 1999, no pet.); Lackey
v. State, 881 S.W.2d 418, 420-21 (Tex. App.--Dallas 1994, pet. ref'd); see also Ex parte Chavez,
213 S.W.3d 320, 323 (Tex. Crim. App. 2006) (describing this principle as involving a "very limited,
'exceedingly rare,' and somewhat amorphous" review). 

 Solem had suggested, as a three-part test, that an appellate court consider: (1) the gravity of
the offense compared with the harshness of the penalty; (2) the sentences imposed for similar crimes
in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other
jurisdictions. See Solem, 463 U.S. at 292. Harmelin at least raised questions about the viability of
the Solem three-part test. In fact, it was subsequently held that proportionality survived Harmelin,
but that the Solem three-part test did not. See McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.
1992); Lackey, 881 S.W.2d at 420-21. In light of Harmelin, the test has been reformulated as an
initial threshold comparison of the gravity of the offense with the severity of the sentence, and then,
only if that initial comparison created an inference that the sentence was grossly disproportionate to
the offense should there be a consideration of the other two Solem factors--(1) sentences for similar
crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions. 
McGruder, 954 F.2d at 316; Mullins, 208 S.W.3d at 470; Lackey, 881 S.W.2d at 420-21. 

 Davis argues the sentences, while within the statutory range of punishment, are grossly
disproportionate to the offense. Davis was sentenced to ten years for aggravated assault. Aggravated
assault is a second-degree felony with a punishment range of two to twenty years' imprisonment. 
See Tex. Penal Code Ann. § 12.33 (Vernon 2003), Â§ 22.02(b) (Vernon Supp. 2007). In the course
of committing this offense, Davis placed the victim at the risk of serious injury or death. Given the
gravity of this offense, a ten-year sentence--in the middle of the statutory range of punishment--is
not grossly disproportionate. The trial court sentenced Davis to twenty years for possession of a
controlled substance with intent to deliver. Under the facts stipulated by Davis, this offense was a
first-degree felony with a range of punishment of five years to life. See Tex. Health & Safety
Code Ann. Â§ 481.112(d) (Vernon 2003); Tex. Penal Code Ann. Â§Â 12.32 (Vernon 2003). This
offense places the entire community in danger, and the sentence assessed is at the lower end of the
statutory range. 

 Davis also challenges the sentence of ten years for unlawful possession of a firearm by a
felon. As a third-degree felony, the trial court assessed the maximum sentence permissible. See
Tex. Penal Code Ann. Â§ 12.34 (Vernon 2003), Â§ 46.04(e) (Vernon Supp. 2007). Davis' main
complaint concerns the trial court's decision to order the ten-year sentence for possession of a firearm
by a felon to be served consecutive to the ten-year sentence for aggravated assault. Davis does not
argue that the trial court lacked authority to stack the sentence. See Tex. Code Crim. Proc. Ann.
art. 42.08 (Vernon 2006). The cumulation of sentences does not constitute cruel and unusual
punishment. Stevens v. State, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984); Baird v. State, 455
S.W.2d 259 (Tex. Crim. App. 1970); Quintana v. State, 777 S.W.2d 474, 480 (Tex. App.--Corpus
Christi 1989, pet. ref'd). Davis has not shown the trial court's decision to order the sentence to be
served consecutively, or stacked, caused the sentence to be grossly disproportionate. 

 Further, evidence was presented that Davis had been previously convicted in 1998 of the
offense of aggravated robbery and sentenced to ten years' confinement. The severity of the sentences
imposed are not grossly disproportionate to the gravity of the offenses. 

 Finally, there is no evidence in the record comparing Davis' sentence with other sentences
for similar crimes in Texas or comparing the sentences imposed on persons in Texas with sentences
in other jurisdictions. Mullins, 208 S.W.3d 469; see Fluellen v. State, 71 S.W.3d 870, 873 (Tex.
App.--Texarkana 2002, pet. ref'd); Latham v. State, 20 S.W.3d 63, 69 (Tex. App.--Texarkana 2000,
pet. ref'd). Davis' second point of error is overruled.

 For the reasons stated, we affirm the judgment of the trial court.



 Jack Carter

 Justice


Date Submitted: June 13, 2008

Date Decided: June 18, 2008


Do Not Publish

1. Allen v. United States, 164 U.S. 492 (1896).
2. When asked, "What about the manner in which it would be served?" the State informed
Judge Khoury that it would "defer to the Court." Defense counsel stated, in his talks with the State,
that the State "did not oppose concurrent time as part of the recommendation" and asked Judge
Khoury to "follow the State's recommendation and to do concurrent time." 
3. See Davis v. State, cause numbers 06-07-00145-CR and 06-07-00146-CR.