**Opinion filed July 7, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00268-CR

_____

## AUSTIN RAY JORDAN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 13136**

## M E M O R A N D U M   O P I N I O N

On October 26, 2020, Appellant pleaded guilty to the charge of aggravated assault, a second-degree felony. *See* TEX. PENAL CODE ANN. 22.02(a), (b) (West Supp. 2022). Pursuant to the terms of a plea agreement, the trial court deferred adjudication and placed Appellant on community supervision for four years and assessed a fine of $2,000. Subsequently, the State filed a motion to proceed with an adjudication of guilt wherein it alleged two violations of the terms and conditions of

Appellant's deferred adjudication community supervision. However, the State abandoned one of those allegations at the hearing on the motion. The hearing proceeded on the remaining allegation—that while on deferred adjudication community supervision, Appellant committed the offense of assault causing bodily injury by "headbutt[ing]" his mother and striking her multiple times in the face with his open hand. The trial court found the allegation to be true and it revoked Appellant's community supervision, found him guilty of the charged offense, and assessed his punishment at confinement for a term of sixteen years in the Institutional Division of the Texas Department of Criminal Justice. We modify and affirm.

*Background Facts*

In 2020, Appellant pleaded guilty to the second-degree felony offense of aggravated assault. At the hearing, Appellant confirmed that he committed the offense as charged in the indictment: that he stabbed the victim in the chest with a knife. Appellant testified that the victim was a friend and that they "were just doing drugs together."

At the hearing on the motion to proceed with an adjudication of guilt, the trial court took judicial notice of an expert report that confirmed Appellant's competency to stand trial. Appellant's mother testified that Appellant had been diagnosed with "meth-induced" schizophrenia and was prescribed medication. She testified that Appellant had been involuntarily committed to several mental health treatment centers prior to his community supervision. His mother stated that Appellant refused to take his medication as prescribed and refused to comply with the treatment plan provided by MHMR.

Appellant's mother testified that, in May 2021, she came home to find that Appellant had caused significant damage to her residence. Appellant's mother confronted Appellant and she subsequently called the police when Appellant

headbutted her in the face, causing her pain. While she was on the phone with the operator, Appellant continued to hit his mother on the head with his hands. The officer who responded to the call testified that he observed Appellant displaying erratic behavior when he arrived at the residence. Appellant's mother testified that she had a headache for about a week afterwards.

At the hearing, Appellant's mother requested, and was subsequently granted, a lifetime protective order against Appellant. She stated the reason that she sought the order was because she did not want to live in fear. At the conclusion of the hearing, the trial court found that Appellant had violated the terms of his community supervision and found him guilty of the original offense of aggravated assault.

*Analysis*

In his sole issue, Appellant contends that the term of his punishment was excessive and violated his right under the Eighth Amendment to be free from cruel and unusual punishment. *See* U.S. CONST. amend. VIII. Appellant contends that his sentence of imprisonment is "unjust" and "grossly disproportionate" for three reasons: his youth at the time of the offense; the mental illness from which he suffers; and that the victim of the original offense did not desire his prosecution. Appellant argues that his sentence violated Article I, Section 13 of the Texas constitution for the same reasons. *See* TEX. CONST. art. I, § 13. Because there is "no significance in the difference between the Eighth Amendment's 'cruel and unusual' phrasing and the 'cruel *or* unusual' phrasing of Art. I, Sec. 13 of the Texas Constitution[,]" we address Appellant's complaints together. *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997). The State argues that Appellant did not preserve this issue for appeal, and that, even if it were preserved, the sentence did not constitute cruel and unusual punishment.

3

To preserve a complaint that a sentence constitutes cruel and unusual punishment, a defendant must first raise the issue to the trial court by a "timely request, objection, or motion" stating grounds for the desired ruling and the trial court must either rule or refuse to rule on the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1), (2); *Jones v. State*, No. 11-19-00251-CR, 2021 WL 3413794, at *1 (Tex. App.—Eastland Aug. 5, 2021, no pet.) (mem. op., not designated for publication). An appellant may also preserve a sentencing issue by raising it in a motion for new trial. *Jones*, 2021 WL 3413794, at *2. Appellant did not object to his sentence on any grounds at the time the trial court pronounced the sentence, but Appellant did present his appellate complaint in his motion for new trial. Therefore, Appellant preserved his appellate issue for our review.

When we review a trial court's sentencing determination, "a great deal of discretion is allowed the sentencing judge." *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984). We will not disturb a trial court's decision as to punishment "absent a showing of abuse of discretion and harm." *Id.* (citing *Hogan v. State*, 529 S.W.2d 515 (Tex. Crim. App. 1975)).

Appellant pleaded guilty to the second-degree felony offense of aggravated assault. The punishment range for this offense is imprisonment for a term of two to twenty years and a fine no greater than $10,000. PENAL § 12.33 (West 2019). Therefore, Appellant's sixteen-year sentence and $2,000 fine falls squarely within the statutory range of punishment.

Generally, "punishment assessed within the statutory limits . . . is not excessive, cruel, or unusual." *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). However, a sentence that is within the applicable range of punishment might be cruel or unusual in the "exceedingly rare" or "extreme" case in which the sentence is grossly disproportionate to the offense. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy,

4

J., concurring)); *Solem v. Helm*, 463 U.S. 277, 287 (1983). "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer*, 538 U.S. at 77.

"To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses." *Simpson*, 488 S.W.3d at 323 (citing *Graham v. Florida*, 560 U.S. 48, 60 (2010)). "In the rare case in which [the] threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* (citing *Graham*, 560 U.S. at 60). "If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual." *Id.* (citing *Graham*, 560 U.S. at 60).

The Eighth Amendment prohibits sentences that are "grossly disproportionate" to the offense for which the defendant has been convicted. *Bradfield v. State*, 42 S.W.3d 350, 353 (Tex. App.—Eastland 2001, pet. ref'd) (citing *Harmelin*, 501 U.S. at 959). To evaluate the proportionality of a sentence, the first step is for us to make a threshold comparison between the gravity of the offense and the severity of the sentence. *Id.* When analyzing the gravity of the offense, we examine the harm caused or threatened to the victim or society and the culpability of the offender. *See, e.g., Hooper v. State*, No. 11-10-00284-CR, 2011 WL 3855190, at *3 (Tex. App.—Eastland Aug. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *Solem*, 463 U.S. at 291–92). Only if grossly disproportionate to the offense, must we then compare Appellant's sentence with the sentences received

for similar crimes in this jurisdiction or in other jurisdictions. *Bradfield*, 42 S.W.3d at 353–54.

We begin our analysis of Appellant's sentence by noting that by stabbing the victim in the chest with a knife, Appellant committed an act of great severity that posed a significant risk to the life of another. Additionally, the record established that Appellant committed another violent act upon his mother while on deferred adjudication community supervision. The record also indicates that Appellant refused to comply with the continued attempts at treatment of his mental illness, and that his mother's fear of him was so great that she sought and obtained a permanent protective order against him.

The evidence presented at trial does not indicate an abuse of discretion of the trial court in sentencing Appellant to confinement for sixteen years—a term less than the maximum permitted for the offense. One of the goals of the Penal Code is to ensure the public safety through deterrence, rehabilitation, and punishment. *See* PENAL § 1.02(1) (West 2021). Considering the gravity of Appellant's offense, his conduct while on community supervision, and the damage brought as a result of his actions, we cannot hold that the sentence imposed by the trial court was grossly disproportionate to the crime to which Appellant pleaded guilty. Furthermore, the sentence serves the goal of protecting the public safety. Consequently, we need not compare Appellant's sentence with the sentences received for similar crimes in this or other jurisdictions. *See Simpson*, 488 S.W.3d at 323. Accordingly, we overrule Appellant's sole issue on appeal.

We note, however, that the trial court's judgment incorrectly reflects that Appellant pleaded "TRUE" to the motion to adjudicate, and that it also incorrectly reflects that there was a plea bargain agreement. The record reflects that Appellant did not affirmatively enter a plea of "true" or "not true" to the allegations and that a contested hearing was held. An appellate court has the power to modify the trial

6

court's judgment to make the judgment speak the truth when it has the necessary information before it to do so.  *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).  Because we have the necessary information to make the judgment speak the truth, we modify the judgment of the trial court to delete "TRUE" in the section titled "Plea to Motion to Adjudicate" and to delete "FIVE (5) YEARS INSTITUTIONAL DIVISION" in the section titled "Terms of Plea Bargain."

*This Court's Ruling*

As modified, we affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

July 7, 2023

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.